UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| CHAMBERS OF<br>BRENDAN A. HURSON<br>UNITED STATES MAGISTRATE JUDGE | 101 WEST LOMBARD STREET<br>BALTIMORE, MARYLAND 21201<br>(410) 962-0782<br>MDD_BAHChambers@mdd.uscourts.gov |

August 25, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:   *Helen A.-R. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
       Civil No. 22-2986-BAH

Dear Counsel:

On November 17, 2022, Plaintiff Helen A.-R. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny her claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2021). I have considered the record in this case (ECF 10), the parties' dispositive filings[1] (ECFs 13 and 15), and Plaintiff's reply (ECF 16). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY both motions, REVERSE the Commissioner's decision, and REMAND the case to the Commissioner for further consideration. This letter explains why.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on January 24, 2017, alleging a disability onset of January 1, 2014. Tr. 177–82. Plaintiff's claim was denied initially and on reconsideration. Tr. 81, 92. On September 7, 2018, an Administrative Law Judge ("ALJ") held a hearing. Tr. 45–72. Following the hearing, on December 14, 2018, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 16–37. The Appeals Council denied Plaintiff's request for review, Tr. 1–9, so Plaintiff appealed to this Court. Tr. 859–70. On March 26, 2021, the Court remanded Plaintiff's case to the SSA for further analysis. Tr. 851–58. The Appeals Council then vacated the ALJ's decision and remanded Plaintiff's case to an ALJ for further proceedings. Tr. 842–48.

---

[1] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, parties now file dispositive "briefs" rather than "motions for summary judgment." Here, the parties styled their dispositive filings as motions for summary judgment. ECFs 13, 15.

[2] 42 U.S.C. §§ 301 et seq.

A second hearing was held before a different ALJ on January 27, 2022.  Tr. 809–41.  On August 3, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame.  Tr. 790–808.  This decision constitutes the final, reviewable decision of the SSA.  *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 20 C.F.R. § 404.984(d); *see also* 20 C.F.R. § 422.210(a).

## II.     THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520.  "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'"  *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2014 through her date last insured of June 30, 2018."  Tr. 789.  At step two, the ALJ found that "[t]hrough the date last insured," Plaintiff "had the following severe impairments: fibromyalgia, degenerative disc disease of the lumbar spine with spondylosis and radiculopathy; lumbar stenosis (Exhibit 24F); chronic pain syndrome (Exhibit 16F); [and] myofascial pain (Exhibit 24F)."  *Id.*  The ALJ also determined that Plaintiff suffered from the non-severe physical impairments of "asthma, allergic rhinitis, maxillary sinusitis, headaches, occipital neuralgia, ovarian lesion, and vitamin D deficiency," and the non-severe mental impairments of "anxiety and depression."  Tr. 790.  At step three, the ALJ determined that "[t]hrough the date last insured," Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 792.  Despite these impairments, the ALJ determined that, through the date on which she was last insured, Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant requires the option to change positions as needed as least once per hour for at least a few minutes while on task.  The claimant can perform postural activities (climb ramps/stairs, ladders/ropes/scaffolds, balance, stoop, kneel, crouch or crawl) on an occasional basis.  The claimant can tolerate no more than occasional exposure to extreme cold, to vibration, humidity, fumes/dusts/odors/gases/poor ventilation.  The claimant must avoid all hazards such as moving machinery and unprotected heights.  She is limited to frequent handling bilaterally and to no more than occasional push/pull with left lower extremity.

Tr. 793. The ALJ determined that, through the date on which she was last insured, Plaintiff was unable to perform past relevant work as a machine packager (DOT[3] #920.685-078) and a driver (DOT #913.463-018) but could perform other jobs that existed in significant numbers in the national economy. Tr. 800–01. Therefore, the ALJ found that Plaintiff was not disabled. Tr. 802.

## III.   LEGAL STANDARD

As noted, the scope of my review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV.   ANALYSIS

Plaintiff raises several arguments on appeal, specifically that the ALJ: (1) erroneously evaluated the opinions of Plaintiff's treating physicians; (2) erroneously assessed the RFC by failing to explain Plaintiff's need to "change positions" at least once per hour; (3) failed to account for Plaintiff's anticipated absenteeism and lack of ability to work five days per week for eight hours per day; (4) failed to correctly evaluate evidence pertinent to Plaintiff's right upper extremity; and (5) "did not consider the specific dictates of" *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020) "as to how fibromyalgia cases are to be evaluated." ECF 13-1, at 3–14. Defendant counters that: (1) "[t]he ALJ's assessment of Plaintiff's residual functional capacity to perform sedentary work is supported by substantial evidence"; (2) the ALJ's evaluation of opinion evidence comported with relevant law; (3) the ALJ "properly considered Plaintiff's symptoms in light of all available evidence of record, without overly focusing on objective medical evidence"; and (4) the ALJ properly relied on the vocational expert's testimony in providing an RFC limitation related to changing positions as needed at least once per hour. ECF 15-1, at 6–26.

---

[3] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

The Court begins its analysis by examining Plaintiff's contention that the ALJ erred in evaluating her fibromyalgia. ECF 13-1, at 12–13. The Fourth Circuit has held that an ALJ may not "rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia." *Arakas*, 983 F.3d at 97. In *Arakas*, the Fourth Circuit found that an ALJ properly concluded that a claimant's "medically determinable impairments 'could reasonably be expected to cause some of the alleged symptoms,' thus satisfying the first step of the symptom-evaluation framework." *Id*. at 96. "But at the second step, the ALJ improperly discredited [the claimant's] statements about the severity, persistence, and limited effects of her symptoms because [the ALJ] did not find them to be 'completely consistent with the objective evidence.'" *Id*. (internal citations omitted). "Because [the claimant] was 'entitled to rely exclusively on subjective evidence to prove' that her symptoms were 'so continuous and/or so severe that [they] prevent[ed] [her] from working a full eight hour day,' the ALJ 'applied an incorrect legal standard' in discrediting her complaints based on the lack of objective evidence corroborating them." *Id*. (alterations in original) (internal citations omitted). The court concluded that the ALJ "'improperly increased [the claimant's] burden of proof' by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence." *Id*.

Plaintiff persuasively argues that the ALJ in this case evaluated fibromyalgia in a manner contrary to *Arakas*'s holding. ECF 13-1, at 12–13. Here, the ALJ determined at step two that Plaintiff's fibromyalgia was severe based upon the "totality of the medical evidence of record, including the diagnosis of fibromyalgia and the claimant's longitudinal treatment records." Tr. 789–90. The ALJ observed that Plaintiff "noted that she has chronic pain in her back as well as pain throughout her body due to fibromyalgia" and that she reported being unable to work as a result. Tr. 794. Ultimately, the ALJ determined that Plaintiff's fibromyalgia and other impairments "could reasonably be expected to cause the alleged symptoms" but that Plaintiff's statements regarding her symptoms "are not entirely consistent with the medical evidence and other evidence in the record." *Id*. After summarizing Plaintiff's treatment records, the ALJ resumed the discussion of Plaintiff's fibromyalgia:

> Turning to the claimant's fibromyalgia, records indicate that though the claimant endorsed constant aching body pain, the claimant received only intermittent rheumatology treatment with notes indicating that she had not sought care in a year at a visit in 2018 (Exhibit 18F, 20F). Physical exams conducted by the claimant's rheumatologist have shown that the claimant has exhibited only mild tender points with exams routinely indicating that the claimant had a normal gait and station, did not present in acute distress, and had no swelling, redness, or deformities of any joints (Exhibit 18F). The claimant had normal range of motion of the upper extremities including the wrists and shoulders (Exhibit 17F, 10F, 18F). At pain management sessions the claimant noted that her medications helped her pain (Exhibit 16F).

Tr. 797.

This analysis amounts to error under *Arakas*. "Objective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease." *Arakas*, 983 F.3d at 97. As such, the ALJ's references to "a normal gait and station," "no swelling, redness, or deformities of any joints," and a "normal range of motion of the upper extremities including the wrists and shoulders," are all irrelevant to the proper evaluation of fibromyalgia, which produces almost no objective medical evidence of its existence.[4] *See id*. Given that the ALJ noted in the very next paragraph that "fibromyalgia . . . may have no objective findings," Tr. 797, the ALJ's evaluation of such evidence in connection with fibromyalgia is particularly confounding.

The ALJ was, of course, entitled to consider "trigger-point findings," which the *Arakas* court described as the "only 'objective' signs of fibromyalgia." *Arakas*, 983 F.3d at 96–97 (noting that trigger-point findings involve "tenderness in specific sites on the body") (quoting *Johnson v. Astrue*, 597 F.3d 409, 412 (1st Cir. 2010)). But if trigger-point findings are "considered at all," *Arakas* requires that they be "treated as evidence *substantiating* the claimant's impairment." *Id.* at 97–98. Here, the ALJ contravened that mandate by discounting the intensity of Plaintiff's fibromyalgia symptoms due, in part, to Plaintiff having "exhibited only mild tender points" when examined. Tr. 797.

The ALJ's statements regarding Plaintiff's history of treatment for fibromyalgia also warrant remand. The ALJ appears to have discounted Plaintiff's fibromyalgia pain due, in part, to "intermittent" treatment evidenced by "notes indicating that she had not sought care in a year at a visit in 2018." Tr. 797 (citing Exhibits 18F, 20F).[5] However, the July 30, 2018 treatment notes upon which the ALJ relies do not appear to state as much. Rather, the notes state that Plaintiff "was last seen 1 year ago and at that time we referred her to see pain management." Tr. 761. Moreover, the ALJ's statement is belied by a careful review of the record, which reveals that Plaintiff received trigger-point steroid injections for her pain on April 17, 2018—less than a year before the July 2018 notes were prepared. Tr. 729.

The ALJ's evaluation of whether "medications helped" Plaintiff's fibromyalgia pain is also problematic. Tr. 797. The ALJ correctly states, based on April 2018 treatment notes, that Plaintiff "noted that her medications helped her pain." Tr. 797 (citing Exhibit 16F); *see also* Tr. 753 (noting, on April 18, 2018, that Plaintiff's "pain is relieved by pain medication and rest"). But the ALJ's observation is contradicted by Plaintiff's July 30, 2018 treatment notes, which state that Plaintiff "has fibromyalgia and has tried all the medications and treatments for it in the past without avail." Tr. 765. In fact, the ALJ acknowledged earlier in the decision that Plaintiff's

---

[4] The Court is mindful that Plaintiff was also found to suffer from severe impairments which *do* produce objective evidence, such as degenerative disc disease. Tr. 789. But, because the ALJ discussed objective findings (such as gait, range of motion, and joint deformity) within the paragraph devoted solely to Plaintiff's fibromyalgia, *see* Tr. 797, the Court cannot infer that the ALJ's discussion of this evidence was intended to pertain to a different impairment that does produce objective evidence.

[5] Exhibits 18F and 20F are identical. *See* Tr. 759–63, 765–69.

"fibromyalgia[] related symptoms were noted to have been treated with Savella, gabapentin, Lyrica and Cymbalta, each of which reportedly produced little to no improvement in symptoms." Tr. 796. As such, the ALJ's assessment of whether Plaintiff's fibromyalgia was alleviated by medication is internally inconsistent. This "frustrates meaningful review and requires remand." *Mallett v. Berryhill*, No. 5:18-CV-241-D, 2019 WL 2932776, at *4 (E.D.N.C. June 17, 2019) (citing *Hester v. Colvin*, No. 7:14-CV-163-BO, 2015 WL 3409177, at *2 (E.D.N.C. May 27, 2015)), *report and recommendation adopted sub nom. Mallet v. Saul*, 2019 WL 2980032 (E.D.N.C. July 8, 2019).

In sum, remand is warranted due to the ALJ's improper evaluation of Plaintiff's fibromyalgia complaints as well as the inconsistent findings regarding Plaintiff's treatment for fibromyalgia. In remanding for further explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct. Because the case is being remanded on other grounds, I need not address Plaintiff's remaining arguments. On remand, the ALJ is welcome to consider these arguments and make any required adjustments to the opinion.

## V.  CONCLUSION

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 13, is DENIED and Defendant's motion for summary judgment, ECF 15, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge